KEITH M. KIUCHI, ALC
KEITH M. KIUCHI #2735
American Savings Bank Tower
1001 Bishop Street, Suite 985
Honolulu, Hawaii 96813
TEL.: (808) 533-2230; FAX: (808) 533-4391

Appearing Attorney for Gary Victor Dubin

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter of Gary Victor Dubin )<br>)<br>Respondent. )<br>)<br>)<br>)<br>)<br>_____ ) | CIVIL NO. 20-00419 JAO-KJM<br><br>RESPONDENT GARY VICTOR DUBIN'S RESPONSE TO THE COURT'S ORDER OF APRIL 22, 2021; and EXHIBITS 1 – 4 |

## RESPONDENT GARY VICTOR DUBIN'S RESPONSE TO THE COURT'S ORDER OF APRIL 22, 2021

This Court's order of April 22, 2021 directed Respondent GARY VICTOR DUBIN and his counsel to respond to the following two questions: (1) under what authority does Mr. Dubin believe he is entitled to an evidentiary hearing and (2) whether Mr. Dubin's Answer to the Order to Show Cause contains all records relevant to these proceedings, and if not, what records are outstanding. Counsel for Mr. Dubin respectfully responds as follows:

**Request for an Evidentiary Hearing**

The appropriate starting point in responding is the OSC entered by Judge Watson on September 15, 2020 referencing two Ninth Circuit Court of Appeals Opinions which established the standards for imposing reciprocal discipline in this Circuit, ***In re Kramer***, 282 F.3d 721, 724 (9th Cir. 2002), and ***Gadda v. Ashcroft***, 377 F.3d 934, 943 (9th Cir. 2004), with the decision in ***In re Kramer*** based upon a prior decision of the United States Supreme Court in ***In re Ruffalo***, 390 U.S. 544 (1968). In short, Judge Watson concluded, based upon that precedent, that denial of reciprocal discipline in this Court would require an independent review of the record revealing: "(1) a deprivation of due process, (2) insufficient proof of misconduct, or (3) grave injustice which would result from imposition of such discipline," and that the disciplined attorney has the burden: "to demonstrate at least one of the three deficiencies by clear and convincing evidence."

Although Judge Watson's summation is correct, nothing in his summation or in those three decisions addresses the issue when an evidentiary hearing may be required. It is therefore presumed that that decision is to be made by the presiding judge based on to what extent under the circumstances such independent evidentiary inquiry is necessary.

For instance, Ruffalo was disbarred by the Ohio Supreme Court, whose exercise of discretion the Court of Appeals for the Sixth Circuit eventually felt obligated to accept on its face, there being no factual dispute except as to the

2

proprietary of Ruffalo's stipulated conduct and hence no need for an evidentiary hearing. The United States Supreme Court in *Ruffalo* reversed, quoting from its decision in *Randall v. Brigham*, 7 Wall. 523, 540, holding that: "when proceedings for disbarment are not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defense." This imposes the inquiry, quoting *Selling v. Redford*, 243 U.S. 46, 51, whether: "the state procedure from want of notice or opportunity to be heard was wanting in due process", finding that Ruffalo was not given specific notice of the charges against him when state disciplinary proceedings were first commenced, hence no evidentiary hearing being necessary.

Subsequently, Kramer's New York State disbarment resulted in reciprocal discipline in California federal court, which the Court of Appeals for the Ninth Circuit subsequently reversed pursuant to Selling, supra, since no notice was first given to Kramer, which then resulted in that Court adopting and issuing an OSC, and then again disbarring Kramer. When the Kramer case came back to the Court of Appeals it elaborated that practicing law in federal court was a privilege that could be reciprocally denied but first the attorney must be given notice and an opportunity to dispute reciprocal discipline if able to show that the state disciplinary procedures lacked due process. Kramer was thus belatedly given

3

notice and reciprocal discipline imposed, having had a prior disciplinary history of 38 instances of adjudicated misconduct, yet again there was not discussion regarding the availability of an evidentiary hearing.

In the *Gadda* case, the Ninth Circuit Court of Appeals merely reaffirmed its earlier decision in *Kramer*, whereas Gadda did not dispute the disbarment charges, contending only that the California courts had no jurisdiction over his practice since he practiced federal immigration law only. Reciprocal discipline was affirmed against Gadda, again with no discussion of an evidentiary hearing took place as none was requested nor necessary.

Mr. Dubin then conducted legal research in Westlaw, using two search terms, "attorney discipline and due process" and "attorney discipline and evidentiary hearing" which collectively yielded nearly 100 reported cases. Of those nearly 100, almost all of them resulted in reciprocal discipline being imposed with no discussion of the holding of an evidentiary hearing as no such demand was apparently made. The record in every case focused on mainly a single alleged misconduct issue with vague complaints regarding procedural due process violations. In Mr. Dubin's research, there were found a few refusals to impose original or reciprocal discipline, instructively reaffirming Ninth Circuit precedent, supra, and identifying the prohibited outside boundaries for attorney discipline, yet

again failing to discuss the availability of or restrictions on post-discipline evidentiary hearings.

For example, the ***Ohio Supreme Court in Disciplinary Counsel v. Reinheimer***, 162 Ohio St. 3d 219, 165 N.E. 3d 235 (2020) (Exhibit **1**), dismissed disciplinary charges against an attorney on procedural due process grounds since the complaint did not contain the charge, citing ***Ruffalo***, supra.

There is however one reciprocal discipline case precedent in this Court where not only was a three-judge presiding panel appointed, but where the attorney was allowed to explain his defenses facing only a 30-day suspension and apparently to submit limited additional evidence, In re Partington, 2017 WL 4560070 (Exhibit **2**).

Respondent believes that the record is sufficient without an evidentiary hearing to satisfy all three of the standards denying reciprocal discipline outlined above by Judge Watson on all issues except those regarding the secret and false ex parte communications between ODC staff and the Hawaii Supreme Court discussed in Respondent's new federal complaint, Case No. 21-cv-00175, incorporated herein by this reference, for which a limited amount of documentary discovery is needed. However, the official record needs to be secured from the Clerk of the Hawaii Supreme Court.

Mr. Dubin's concerns of ex parte communications are highlighted by the fact that after he was no longer allowed to practice law in the state courts of the State of Hawaii (which was November 9, 2020), Mr. Dubin and his undersigned counsel received five complaints that were sent to him from former clients. At least two of those complaints (Exhibit **3** – Kirah Garcia; Exhibit **4** – Wendy Allison Nora) appear to be based upon complaints filed BEFORE the date of the Hawaiʻi Supreme Court order, which was September 9, 2020. (The attached exhibits are only the letters to Mr. Dubin and the complaints have not been attached). The point is that Mr. Dubin believes that there were other complaints which were the subject of ex parte communications to the Hawaiʻi Supreme Court, and an evidentiary hearing would allow him to present, after a subpoena is issued to the Office of Disciplinary Counsel, the extent of these complaints, which Mr. Dubin has never been able to confront. Mr. Dubin was denied due process because he asserts that the actions taken by the Hawaiʻi Supreme Court are based in part on allegations that he never was allowed to refute.

The basic elements of procedural due process of law require both notice and an opportunity to be heard at a meaningful time and in a meaningful manner. ***Sandy Beach Def. Fund v. City Council of the City & Cnty of Honolulu***, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) Our Supreme Court has held that an "elementary and fundamental requirement of due process" is "notice reasonably

calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ***In re Herrick***, 82 Haw. 329, 343, 922 P.2d 942, 956 (quoting ***Klinger v. Kepano***, 64 Haw. 4, 10, 635 P.2d 938, 942 (1981). Any affected parties must be informed of the: "action about to be taken against them as well as of procedures available for challenging that action." ***Brown v. Thompson***, 91 Haw. 1, 10, 979 P.2d 586, 595 (1999).[1]

Mr. Dubin's point is that if the disciplinary action taken against him was based upon any of these complaints that were made with ODC and then communicated ex parte to the Hawai`i Supreme Court, that he never had a chance to present his objections to the charges and was never heard at a meaningful time and in a meaningful manner. Thus, at a minimum, Mr. Dubin should be given an evidentiary hearing to confront these issues, and not doing so deprives him of his due process rights.

---

[1] The denial of due process is a serious argument and requires at a minimum "notice and an opportunity to be heard at a meaningful time and in a meaningful manner". ***First Hawaiian Bank v. Timothy***, 96 Haw. 348, 360, 31 P.2d 205, as amended (Haw.App. 2001) In ***KNG Corp. v. Kim***, 106 Haw. 73, 110 P.3d 397 (2005) the Hawaii Supreme Court reversed a district court trust fund order on the basis that the tenant's counsel was NOT given the opportunity to argue on the court's order for the tenant to pay into a rent trust fund. Although the court there did not find a due process violation, the court still reversed the district court decision because counsel had not been given the opportunity to be heard.

Mr. Dubin, with the assistance of counsel, has put together this response within the Court's required time, but his response consists of a hastily prepared response, which really requires additional time to brief and document the issues newly improved upon in his federal complaint, supra, and to tie those facts and issues to Judge Watson's standards of review.

Mr. Dubin also has issues with the way that his disciplinary proceedings were conducted, a summation of which is below prepared by Mr. Dubin:

1.  On the surface everything looks somewhat regular. There was supposedly a formal petition for discipline in writing, amended, served on me, and various written procedures providing for an answer, my answer, pretrial conferences, a supposed neutral hearing officer, hearings, a supposed recommendation from the hearing officer regarding discipline with findings reviewed by a supposed impartial Board, then sending a discipline recommendation to the Hawaii Supreme Court as a part of its report, with the Court deciding the case supposedly based solely upon the initial charges providing due process notice to me, and based only on the record before it, after briefing of the issues.

2.  However, that is not what in reality happened. The ODC investigator was conflicted. The hearing officer was conflicted. The Board was conflicted.

Challenged and even confessing to the conflicts, none recused, and one attempt by the Board Chairperson was even admittedly made to cover up the conflict.

3. The hearing officer in an incomprehensible one-page letter decision merely adopted verbatim the proposed findings of the prosecutor, adding only that all of the charges taken together not individually somehow warranted disbarment.

4. The Board in turn entered an order with no independent findings merely adopting the hearing officer's findings and recommendation verbatim (those of the prosecutor) as its report to the Court.

5. Yet whereas the Rules require its Report to be transmitted to the Court immediately, the Board did not do so for months, close to half a year.

6. And when it did it submitted a Report different than what it had adopted, without recording the vote as required by the Rules, written by a specially hired ODC counsel who used to represent me.

7. And when I objected and submitted a copy of my retainer check to her earlier which she had denied to the Court, the Court disqualified her and the entire ODC staff but left her report in and took no personal action against her for lying to it.

8. The Court, following briefing on the prosecutor's findings and recommendation, which were adopted verbatim by the hearing officer and the Board, entered its order of disbarment based on eight findings, several of which I

9

was not even charged with in the petition and the amended petition for discipline, arising only at the end of the hearing officer hearings.

9. Worst still, although ex parte communications between the Court and the Board and the hearing officer and the ODC are prohibited by the Rules, it surfaced in post disbarment motions that the ODC had communicated to the Court, apparently through the Board, behind my back and behind my counsel's back, that it had received other complaints to it and to the Lawyer's Fund that were not disclosed to me or to my attorneys, which were not real.

10. Earlier the ODC had filed an action before the Court to suspend me in advance of the submission of the Board's report to the Court, and had presented to the Court the record before the Board, the exact record before the Court when it disbarred me, yet at that earlier time the Court denied the attempt to suspend me finding the record insufficient for a relatively mere suspension!

11. But in the order denying suspension the Court opined that it was without prejudice should the ODC submit other complaints against me. The ODC reads that as a dog whistle!

12. Thus, my case against reciprocal discipline does not deserve the usual deference to the findings of the state court which throughout did not follow its own Rules, in the process violating my due process rights. My "trial" was a series of totally sham procedures which can be documented.

Mr. Dubin has cited above 12 reasons, emanating from his disciplinary proceedings, for why he needs an evidentiary hearing.

### **Whether Mr. Dubin's Answer to the Order to Show Cause contains all records relevant to these proceedings, and if not, what records are outstanding.**

The simple answer to this is no, there are more records, but Mr. Dubin does not know what those records are. Mr. Dubin's filing of the federal lawsuit was in part to conduct discovery to obtain these outstanding records, which include: (a) records in the possession of ODC that Mr. Dubin has never been given, and (b) follow up records based upon the ODC records that he does obtain. A large part of this matter involves "complaints" filed against Mr. Dubin that he has never been given an opportunity to confront, and based upon receiving several letters from ODC about complaints after November 9, 2020, Mr. Dubin believes this to be true and believes that discovery will reveal additional records.

Thus Mr. Dubin respectfully submits that that he has not submitted all of the records, and that discovery will produce additional records.

DATED: Honolulu, Hawaii, May 21, 2021.

/s/ Keith M. Kiuchi

_____

KEITH M. KIUCHI
Appearing Attorney for Gary Victor Dubin