IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter of Gary Victor Dubin | CIVIL NO. 20-00419 JAO-KJM |
| | ORDER OF DISBARMENT |

## ORDER OF DISBARMENT

The Hawai'i Supreme Court disbarred Respondent Gary Victor Dubin ("Respondent"), effective November 9, 2020.  In these proceedings, the Court determines whether reciprocal discipline should be imposed upon Respondent. After considering Respondent's submissions, the record before the Hawai'i Supreme Court, and Respondent's arguments at oral argument, the Court finds that reciprocal discipline is appropriate and HEREBY DISBARS Respondent from practicing law in this district court.

## BACKGROUND

**A.     Factual History**

**1.     Disciplinary Proceedings**

By way of background, Hawaii's attorney disciplinary proceedings commence when the Office of Disciplinary Counsel ("ODC") learns of alleged attorney misconduct through a complaint or otherwise.  *See* Rules of the Supreme

Court of Hawaiʻi ("RSCH") Rules 2.6(b)(1),  2.7(a).  ODC investigates the matter

and makes a recommendation — ranging from dismissal to formal disciplinary

proceedings — to a member of the Disciplinary Board of the Hawaiʻi Supreme

Court ("Disciplinary Board").  *See* RSCH Rule 2.7(a).  If formal disciplinary

proceedings are approved, ODC petitions the Disciplinary Board.  *See* RSCH Rule

2.7(c).  Thereafter, a hearing officer or committee conducts an evidentiary hearing

and submits a report including findings and recommendations and record to the

Disciplinary Board.  *See id*.  In the event the Disciplinary Board determines that

discipline greater than an informal admonition or reprimand is warranted, it

submits a report with findings and recommendations and record to the Hawaiʻi

Supreme Court.  *See* RSCH Rule 2.7(d).  In rendering its decision, the Hawaiʻi

Supreme Court may consider briefs or oral argument and has the discretion to issue

opinions or orders, or "adopt and publish the findings and conclusions contained in

the written report of the [Disciplinary] Board."  *Id*.

### a.   Petition for Discipline

ODC initiated formal disciplinary proceedings against Respondent on

January 4, 2017, filing a Petition for discipline with the Disciplinary Board.  ECF

No. 52-3.  On January 9, 2017, ODC filed an Amended Petition for discipline.

ECF No. 52-4.  The Amended Petition addressed four cases:  (1) ODC Case No.

16-O-151 (Joe Smith, Complainant) — Misrepresentations on Licensing

Application (Failure to Report Criminal Conviction); (2) ODC Case No. 16-O-147 (Robert Andia, Complainant) — Signing Clients' Names on Settlement Check Without Permission; (3) ODC Case No. 16-O-213 (Hawai'i Intermediate Court of Appeals ("ICA") Complainant) — Filing of Briefs Not in Compliance with Court Rules, Failure to Timely File, Incompetence; and (4) ODC Case No. 16-O-326 (Robert Kern, Complainant) — Failure to Account for $45,000 Retainer, Removal of Retainer from Trust Without Notice or Being Earned.  *Id.*

ODC Case No. 16-O-151 concerned Respondent's submission of a mortgage solicitor's license application in 2008 without disclosing his federal criminal conviction for failure to file federal income tax returns (*United States v. Dubin*, Crim. No. 93-01434 MLR).  *Id.* at 3–4.  The Department of Commerce and Consumer Affairs revoked Respondent's mortgage solicitor's license due to his misrepresentation on his application.  *Id.* at 4–5.  The Circuit Court of the First Circuit, State of Hawai'i, affirmed, as did the ICA, which found Respondent's misrepresentations to be material.  *Id.* at 5.

ODC found violations of the Hawai'i Rules of Professional Conduct ("HRPC") 8.4(a) (pre-2014 version) (prohibiting lawyers from violating or attempting to violate the rules of professional conduct, or knowingly assisting or inducing another to do so, or doing so through the acts of another) and 8.4(c) (pre-

3

2014 version) (prohibiting layers from engaging in dishonesty, fraud, deceit or misrepresentation). *Id.* at 5–6.

ODC Case No. 16-O-147 involved Respondent's overcharging of clients Robert and Carmelita Andia (collectively, "the Andias") and his unauthorized endorsement of their settlement check. The Andias retained Respondent in February 2012, and their legal services agreement outlined hourly rate ranges for senior and associate attorneys. *Id.* at 6. On November 3, 2015, Respondent received a $132,000.00 settlement check made out to the Andias and did not notify them. *Id.* at 6–7. He signed their names on the check without their authorization and deposited the proceeds into his client trust account. *Id.* at 7. Respondent did not provide the Andias with their first billing statement until November 7, 2015, which included charges for two associates at a $385.00 hourly rate, well in excess of the $180.00 to $250.00 hourly rate range in the retainer agreement established for associate attorneys. *Id.* at 7. To cover the $78,202.87 bill, minus the $16,500.00 initially paid by the Andias, Respondent took $61,702.87 from the settlement proceeds. *Id.*

ODC determined that Respondent violated: (1) HRPC 8.4(c) by signing the Andias' names on the settlement check; (2) HRPC 1.4(a)(3) by failing to both immediately notify the Andias that he received the settlement check and provide a bill for over three-and-a-half years; (3) HRPC 8.4(c) and 1.5(a) by billing an

4

hourly rate that exceeded both the agreed upon rate and a reasonable rate for recently admitted attorneys; (4) HRPC 1.5(b) by failing to inform the Andias that the hourly rate had changed; and (5) HRPC 8.4(a) for engaging in the foregoing. *Id.* at 8–9.

ODC Case No. 16-O-213 concerned Respondent's repeated violations of the Hawai'i Rules of Appellate Procedure and the issuance of sanctions against him in multiple appeals filed on behalf of his clients between 2012 and 2014. *Id.* at 9–14. ODC found that by repeatedly failing to timely file briefs and documents and failing to comply with brief preparation requirements, Respondent violated HRPC (pre- and post-2014) 1.1 (requiring that counsel provide competent representation to a client); 3.4(e) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal); 3.2 (requiring a lawyer to make reasonable efforts to expedite litigation consistent with a client's legitimate interests); 3.1 (prohibiting a lawyer from bringing or defending a proceeding, or asserting an issue therein, unless there is a non-frivolous basis for doing so); and 8.4(a). *Id.* at 15.

ODC Case No. 16-O-326 regarded Respondent's failure to account for a retainer and his removal of the retainer from the trust account without notice. *Id.* at 15. Respondent represented Michael Harkey ("Harkey") in cases in Washington and Nevada. Harkey transferred $20,000.00 and $25,000.00 into Respondent's client trust account in January and April 2016, respectively. *Id.* at 15–17.

Respondent then withdrew from Harkey's Nevada action. *Id.* at 18. Respondent promised to provide Harkey with an accounting but never did. *Id.*

In May 2016, Harkey hired Robert Kern ("Kern"), an attorney, to obtain the $45,000.00 retainer remitted to Respondent. *Id.* at 19. Kern reached out to Respondent at the end of May, requesting an accounting of the authorized work he performed and to return of the balance of the funds. *Id.* Between May and the end of August, Kern made repeated requests for the accounting and Respondent offered many excuses for failing to provide it, while assuring Kern it was forthcoming. *Id.* at 19–20.

Kern submitted a complaint to ODC in September 2016 for failure to return the retainer or provide an accounting. *Id.* at 21. Respondent responded on September 23, 2016 with a "Client Trust Log" showing that he removed the $20,000.00 January transfer on March 7, 2016, and the $25,000.00 April transfer on April 18, 2016. *Id.* ODC followed up, asking Respondent four questions, with questions three and four being: (3) whom he informed about the fund disbursements, how he informed them, and to provide supporting documentation, and (4) to furnish ODC with the billing or accounting he provided to Kern or Harkey. *Id.* Respondent did not meet the response deadline and despite a reminder from ODC, never responded to the aforementioned inquiries. *Id.* at 21–22.

ODC identified violations of multiple rules:  (1) HRPC 1.15(d) and 1.4(a)(4) for failing to provide an accounting of the $45,000.00 retainer; (2) HRPC 1.15(a) and (d) for withdrawing $45,000.00 from the trust account without earning it; (3) HRPC 1.15(d) and 1.4(a)(3) for failing to tell Harkey or Kern that the $45,000.00 had been removed from Respondent's client trust account; (4) HRPC 8.4(g) for failing to respond to ODC's questions; and (5) HRPC 8.4(a) for engaging in the foregoing conduct.  *Id.* at 22–23.

ODC requested that the matter be assigned to a hearing committee or hearing officer, that proceedings be commenced to provide a recommendation to the Disciplinary Board regarding appropriate discipline to impose upon Respondent, and that Respondent be required to take the Multistate Professional Responsibility Examination.  *Id.* at 23.

**b.    Service and Answer**

Respondent was served with the Petition and Amended Petition on January 20, 2017.  ECF No. 52-5.  He requested an extension of time to file an answer. ECF No. 52-6.  The Disciplinary Board granted Respondent's request.  ECF No. 52-7. On March 13, 2017, Respondent filed a Verified Answer to Amended Petition, vigorously denying the allegations against him and characterizing them as frivolous and false.  ECF No. 52-8.  He also asserted numerous affirmative defenses and requested the following relief:  (1) remand of the Amended Petition

7

to ODC so the charges are properly investigated before the initiation of formal proceedings; (2) dismissal of the Amended Petition; (3) bifurcation of the four complaints for hearing; (4) appointment of a three-member hearing panel for each complaint; (5) exoneration from the frivolous and false charges; (6) the right to confront and examine and/or cross-examine any adverse witnesses; (7) preservation of state and federal due process rights; and (8) additional time to secure counsel. *Id.* at 27.

      **c.**    **Hearings**

      At the prehearing conference on May 15, 2017, Respondent objected to Hearing Officer Roy Hughes' ("Hughes") participation in the proceedings based on an inactive case with Respondent in which Hughes' office represented the opposing party on appeal.  ECF No. 54-5 at 2.  Respondent claimed that the case was open, despite the fact that it had been remanded eight years prior with no subsequent action. *Id.* at 2:19–25, 7:4–9.  He also raised a number of due process violations and represented that he planned to file a motion to disqualify Hughes, a motion for a three-examiner panel, a motion to dismiss, and a motion for fees and costs; to seek relief in the Hawaiʻi Supreme Court based on procedural due process violations; to potentially seek relief in federal court based on federal due process violations; and to take his case to the State Bar, and to run for Director of the State Bar on the platform that ODC has become the enemy of the Bar.  *Id*. at 10:25–

8

11:13.  Hughes opted to proceed with the hearing because its only purpose was to set dates and deadlines and did so "on the understanding that [Respondent] will be bringing a motion [to disqualify] and the dates may be moved." *Id*. at 5:7–7:19. As explained below, Respondent did not file a motion to disqualify Hughes until nearly two years later — after Hughes had issued the Findings of Fact and Conclusions of Law.

Evidentiary hearings were held on November 13, 14, 20, 21, 22, 27, and 28, 2017.  ECF Nos. 52-46 to 52-49, 53-1 to 53-3.  Following multiple extensions of time at the parties' requests, ODC filed its Proposed Findings of Fact, Conclusions of Law, and Recommended Discipline on March 22, 2018.  ECF No. 53-19.  On April 6, 2018, Respondent untimely filed his Proposed Findings of Fact and Conclusions of Law and Recommended Disposition.[1]  ECF No. 53-21.

### d.    Findings of Fact and Conclusions of Law

On April 12, 2018, Hughes issued a Findings of Fact, Conclusions of Law, and Recommended Discipline ("FOFCOL").  ECF No. 53-24.  The FOFCOL addressed in detail the testimonial and documentary evidence presented at the hearing to support the four ODC cases.  *Id.*  Hughes applied the ABA Standards for

---

[1]  Respondent's request for an extension of the March 22, 2018 deadline was denied.  ECF No. 53-17.  In his request, Respondent "guaranteed" that he would submit his proposed findings by April 2, 2018, but did not meet that untimely date. He even encouraged ODC to disregard the March 22, 2018 deadline and submit proposed findings on April 2, 2018.  ECF No. 53-18.

Imposing Lawyer Sanctions (2015) in determining the appropriate level of discipline and considered the following factors:  (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the misconduct; and (4) the existence of aggravating or mitigating circumstances.  *Id.* at 34 (¶¶ 165–66) (citations omitted).

<u>Duties violated</u> — Hughes found that Respondent:  (1) failed to preserve Harkey's property; (2) lacked diligence with Harkey and the Andias; (3) lacked competence by failing to meet deadlines and comply with rules before the ICA; (4) lacked candor in submitting his mortgage solicitor application, signing the Andias' names on their settlement check, billing the Andias at an hourly rate that exceeded the amount agreed to without their consent and that exceeded a reasonable rate for recently admitted attorneys, and failing to inform the Andias that the hourly rate had changed; (5) failed to maintain integrity by neglecting to disclose material information on the mortgage solicitation application, signing the Andias' names on their settlement check without their permission, and charging the Andias an hourly rate exceeding the agreement; (6) violated other duties owed as a professional by billing the Andias an excessive rate for recently admitted attorneys and failing to inform them that the rate had changed; (7) abused the legal process by repeatedly failing to timely file briefs and other documents and to comply with briefing

requirements, and failing to respond to ODC questions three and four regarding the Kern matter; and (8) violated the pre-2014 HRPC.  *Id.* at 34–39 (¶¶ 167–85).

Respondent's Mental State — Hughes concluded that Respondent acted "'knowingly' or 'intentionally'" at all relevant times.  *Id.* at 39.

Actual or Potential Injury — Hughes found that the Andias and Harkey suffered actual injury, the judicial system suffered injury, and the public and the profession suffered injury as a result of Respondent's conduct.  *Id.* at 40 (¶¶ 190–91).  He also found that "Respondent's conduct caused actual and potential injury to the public and the legal system."  *Id.* at 41 (¶ 193).

Disbarment as the Presumptive Discipline — Applying ABA Standards, Hughes determined — without yet accounting for aggravating and mitigating factors — that disbarment was the appropriate sanction for many of the duties breached by Respondent, such as failure to preserve client funds, lack of diligence, lack of competence, lack of candor, failure to maintain personal integrity, and abuse of legal process.  *Id.* at 41–44 (¶¶ 194–99).

Aggravating Factors — In aggravation, Hughes found the following factors to be proven by clear and convincing evidence:  (1) prior disciplinary offenses in California and Hawaiʻi; (2) dishonest or selfish motive; (3) pattern of misconduct; (4) multiple offenses; (5) refusal to acknowledge the wrongful nature of conduct; and (6) substantial experience in the practice of law.  *Id.* at 44–46 (¶¶ 200–06).

11

<u>Mitigating Factors</u> — Hughes concluded that Respondent failed to prove mitigating factors by clear and convincing evidence. *Id.* at 46 (¶ 207).

Hughes ultimately determined:

> 211. Based on the clear and convincing evidence presented at the hearing, the Hearing Officer finds that Respondent knowingly and intentionally violated the Hawaiʻi Rules of Professional Conduct as set forth in the Petition and hereby recommends that Respondent is **DISBARRED**; that Respondent be ordered to pay restitution to the Andias in the sum of $19,885.00; and that Respondent reimburse the Petitioner for all costs it incurred in this matter pursuant to RSCH 2.3(c).

*Id.* at 47.

Following the issuance of the FOFCOL, Respondent filed a Notice to the Chairperson of the Disciplinary Board of Respondent's Appeal to the Board of the Hearing Officer's Cavalier Adoption Verbatim of the Petitioner's Proposed Findings of Fact and Conclusions of Law and Recommended Disposition, and Respondent's Timely Disciplinary Board Rule 23(c) Request for Permission to Submit Briefs and to Present Oral Argument to the Board.  ECF No. 53-25.

### e.    Disciplinary Board Review

The parties submitted briefing and the Disciplinary Board held a hearing on December 13, 2018.  ECF Nos. 53-32 to 54-8.

On February 13, 2019, the Disciplinary Board issued a Decision, adopting and accepting the FOFCOL.  ECF No. 54-14 at 1.  It recommended that the Hawaiʻi Supreme Court:  (1) issue an order disbarring Respondent; (2) order

restitution to the Andias in the amount of $19,885.00; and (3) order Respondent to pay the costs of the proceedings to the Disciplinary Board.  *Id.* at 2.

On April 2, 2019, Respondent filed requests for the Disciplinary Board to withdraw its recommendations due to Hughes' conflict and the Board's conflict in light of board member Peter Horovitz's ("Horovitz") role as opposing counsel on an appeal Respondent filed.  ECF Nos. 54-18 to 54-19; ECF No. 54-20 at 2–3.  On April 3, 2019, he filed a Motion to Disqualify the Disciplinary Board and Its Appointed Hearing Examiner, Setting Aside Both the February 13, 2019 "Decision of the Disciplinary Board" (DBF-104) and the Hearing Officer's April 12, 2018 Reported Findings, Conclusions, and Recommendations (DBF-71), Based upon Conflicts of Interest and the Appearance of Impropriety, in Violation of Respondent's Right to Due Process of Law.  ECF No. 54-20; *see also* ECF Nos. 54-21 (memorandum in support), 54-22 (supplemental memorandum).

On April 25, 2019, the Disciplinary Board held a hearing on Respondent's motion.  ECF No. 54-34.  At the start of the hearing, Horovitz explained his decision not to recuse from the earlier proceedings and provided details about the pending appeal in which both he and Respondent were counsel.  *Id.* at 3:19–9:22. He then recused himself from the hearing and deliberation on the motion.  *Id.* at 9:23–10:1.  On April 30, 2019, the Disciplinary Board denied the motion, "finding no new evidence in support of a renewed motion for recusal of Hearing Officer

13

Hughes and finding waiver by Respondent and no abuse of discretion as to recusal of Disciplinary Board Member Peter Horovitz."  ECF No. 54-33 at 2.

    **2.**    **Hawaiʻi Supreme Court Proceedings**

        **a.**    **Disciplinary Board Report, Findings, and Recommendation for the Imposition of Discipline**

On August 8, 2019, the Disciplinary Board filed a Report, Findings, and Recommendation for the Imposition of Discipline ("Report") with the Hawaiʻi Supreme Court.  ECF No. 52-2.  The Disciplinary Board evaluated the disciplinary cases against Respondent based on the most egregious conduct:  (1) overcharging the Andias by $19,885.00 for his associates and by falsifying legal research expenses; and forging their signatures on their settlement check, depositing it into his client trust account, and withdrawing a substantial portion of the funds for himself without their knowledge; and (2) failing to provide a requested timely accounting to Kern (for Harkey), paying himself unearned fees from a client trust account, and billing for 30 hours in a single day.  *Id.* at 7 (citations omitted).

The Disciplinary Board adopted paragraphs 167 to 186 of the FOFCOL regarding duties violated and concluded that Respondent violated the duties imposed by HRPC 1.15(a), (c), (d) (preserving identity of funds and property of a client or third person); 1.4(a) (communication); 8.4(a), (g) (misconduct); and 1.5(a), (b) (fees).  *Id.* at 7–9.  It also found that Respondent acted intentionally and knowingly at all times and that his "conduct caused actual financial and emotional

14

injury to his clients and to the profession." *Id.* at 9 (citations omitted).  Finally, it

adopted Hughes' finding that there are no mitigating factors and accepted the

factors in aggravation:  dishonest or selfish motive, pattern of misconduct, multiple

offenses, bad faith obstruction of the disciplinary process, refusal to acknowledge

the wrongful nature of conduct, substantial experience in the practice of law, and

prior disciplinary offenses.  *Id.* at 10–11 (citations omitted).

The Disciplinary Board recommended disbarment as the appropriate

discipline.  *Id.* at 11.  It further recommended that Respondent make restitution in

the amount of $19,885.00 to the Andias and to pay the costs of the proceedings.

*Id.*

### b.    Briefing and Motions

Before the Hawai'i Supreme Court, Respondent filed a motion to disqualify

Assistant Disciplinary Counsel Charlene Norris ("Norris"), all attorney staff of

ODC and the Disciplinary Board, and to dismiss the petition.  ECF No. 57-16.  He

averred that Norris previously represented him in ODC proceedings for similar

charges.  *Id.* at 2 (¶ 3) (citation omitted).  Respondent also sought disqualification

of ODC and Disciplinary Board attorneys, arguing that Norris' conflict was

imputed to them.  *Id.* at 4 (¶ 6).  He further contended that dismissal was warranted

by the ethical violations, or alternatively, that attorneys from the Department of the

Attorney General replace ODC's counsel to ensure impartial review. *Id.* at 4–5 (¶ 10).

The Hawaiʻi Supreme Court disqualified Norris and ODC, concluding that her consultation with Respondent "in 2006 implicated a substantially related matter." ECF No. 57-37 at 2 (citation omitted). It required an outside attorney to appear on the briefings and submissions in the proceedings.[2] *Id.*

Respondent subsequently filed a motion to dismiss, requesting dismissal of the Report because it was different from the Decision and was written by Norris, who was disqualified from the proceedings. ECF No. 58-15 at 3 (¶¶ 6–7, 10). The motion was denied. ECF No. 58-29.

### c.    Order of Disbarment

On September 9, 2020, the Hawaiʻi Supreme Court issued an Order of Disbarment ("Disbarment Order"), finding and concluding that Respondent engaged in the following misconduct by clear and convincing evidence:

ODC Case No. 16-O-151 — violation of HRPC 8.4(c) (1994) by knowingly misrepresenting the truth on a government form which he certified was true. ECF No. 61-5 at 1–2.

---

[2] Eventually, Hamilton Fox, III, was permitted to appear pro hac vice and Special Assistant Disciplinary Counsel for ODC Matthew Kohm served as local counsel. ECF No. 59-22.

ODC Case No. 16-O-147 — (1) violation of HRPC 8.4(c) (2014) by signing in his clients' names on a $132,000.00 settlement check made out exclusively to them, without their permission, and depositing the check in his client trust account, thereby gaining control over those funds; and (2) violation of HRPC 1.5(a), 1.5(b), 8.4(c), and 1.4(a)(3) (2014) by: (a) failing to immediate notify his clients that he received the check, and (b) neglecting to provide an update of the clients' account for more than three years, then issuing an invoice for $69,702.87 based on a $385.00 hourly rate for associates — exceeding by $115.00 the rate established in the retainer agreement and applying it to an associate who was not licensed to practice law in Hawaiʻi when the work was completed — and doing so without consulting the clients regarding an amendment of the agreed-upon rate, which resulted in an overcharge of at least $19,885.00. *Id.* at 2–3.

ODC Case No. 16-O-326 — (1) violation of HRPC 1.15(a) and (d) (2014) for withdrawing $3,500.00 of client funds when he had yet to earn them; (2) violation of HRPC 1.15(d) (2014) for failing to inform his client when he fully disbursed the client's $45,000.00 from the firm's client trust account; and (3) violation of HRPC 8.4(g) (2014) for failing to respond to ODC's inquiries about the matter. *Id.* at 3.

The Hawaiʻi Supreme Court determined that Respondent's "conduct, in ODC Case Nos. 16-O-147 and 16-O-326, inflicted actual, serious, injury upon the

clients and upon the profession and, in ODC Case No. 16-O-151, inflicted injury

on the public at large and the integrity of the profession." *Id.* at 3.  It also deemed

unmeritorious Respondent's allegations of due process violations throughout the

disciplinary process, having thoroughly reviewed the record and his arguments. *Id.*

As final considerations, the Hawaiʻi Supreme Court noted:

> We also find, in aggravation, that Respondent Dubin has two prior disciplines, evinced a dishonest or selfish motive, demonstrated a pattern of misconduct, committed multiple offenses, refused to acknowledge the wrongful nature of his conduct, and has substantial experience in the practice of law.  In mitigation, the record contains many positive comments from clients, and Dubin has contributed positively to the development of the law.

*Id.* at 4.  The Hawaiʻi Supreme Court disbarred Respondent, effective 30 days after

the entry of the Disbarment Order, and ordered him to pay $19,885.00 in restitution

to the Andias and to bear the costs of the disciplinary proceedings.  *Id.* at 4–5.

### d.   Post-Disbarment Order Proceedings

Respondent sought reconsideration of the Disbarment Order, asserting

insufficiency of proof of misconduct, denial of due process, and defective

conclusions.  ECF No. 61-7.  He asked "to suspend the Rules," to stay all deadlines

pending a decision on the motion, to possibly present oral argument to clarify the

record, and to stay all deadlines if the motion was denied so as to facilitate an

orderly transition.  *Id.* at 52.  The Hawaiʻi Supreme Court denied the motion and

requests for relief but extended the effective date of Respondent's disbarment to November 9, 2020.  ECF No. 61-23.

Respondent then moved to stay the Disbarment Order.  ECF No. 63-9.  He argued in part that a stay was warranted because while reciprocal discipline is "normally almost immediately granted," this Court and the Ninth Circuit granted stays pending his efforts to obtain stays and relief in other courts.  *Id.* at 2–4 (¶¶ 4–9).  The Hawai'i Supreme Court denied the motion to stay and retained the November 9, 2020 effective date for disbarment.  ECF No. 63-26.

Persisting in his efforts to undo his disbarment, Respondent sought to dismiss the Disbarment Order, or alternatively, to grant permission to conduct discovery — including deposing ODC staff and the Disciplinary Board — and stay the effective date of his disbarment beyond November 9, 2020.  ECF Nos. 64-1 to 64-8, 64-11, 64-13.  Respondent requested this relief based on his theory that the Disbarment Order was the result of unconstitutional ex parte disclosures between ODC/Disciplinary Board and the Hawai'i Supreme Court.  ECF No. 64-11.  The Hawai'i Supreme Court held:

> Finally, we find and conclude that this court's September 9, 2020 order of disbarment was based solely and exclusively upon the disciplinary petitions and resulting record arising from the four ODC cases listed in the caption of the September 9, 2020 order, that were heard by the Hearing Officer, considered by the Disciplinary Board, and reviewed *de novo*, exhaustively and carefully, by this court, which, after full consideration of

> Respondent Dubin's numerous due process arguments,
> concluded the record fully warranted disbarment.

ECF No. 64-21 at 2. It consequently denied Respondent's requests for relief. *Id.*

at 3.

Respondent filed *another* motion for reconsideration, insisting that the

Disbarment Order issued as a result of ex parte communications and "secret"

information, in violation of his due process rights. ECF Nos. 64-25, 64-27. The

Hawaiʻi Supreme Court denied this motion as well, ECF No. 64-37 at 3, and

explained:

> Upon consideration of the November 6, 2020 motion for
> reconsideration filed by Respondent Gary Dubin and the exhibits
> and declaration accompanying it, alleging this court has
> improperly relied upon an *ex parte* record to impose disbarment
> upon him and seeking an order dismissing these disciplinary
> proceedings, and the November 8, 2020 appearance and motion
> for an extension of Respondent Dubin's November 9, 2020
> effective disbarment date filed by attorney Keith M. Kiuchi, we
> reiterate that the disposition of this matter was based solely and
> exclusively upon the record of the four cases from the Office of
> Disciplinary Counsel listed in the caption of the disbarment
> order, a record which provided ample evidence supporting
> Respondent Dubin's disbarment, and expressly state that no *ex
> parte* communications or exchanges of any variety occurred in
> the disposition of this matter.

*Id.* at 1–2.

Judgment entered on December 2, 2020. ECF No. 65-30.

**B.    Procedural History**

On September 15, 2020, the Court issued an Order to Show Cause, requiring Respondent to file a response within 14 days why he should not be disbarred in accordance with Local Rule 83.4(b).  ECF No. 1 at 1.  Respondent timely filed an Answer on September 29, 2020.[3]  ECF No. 2.

The Court stayed the proceedings while Respondent sought relief from the Hawaiʻi Supreme Court and the United States Supreme Court.  ECF No. 5.  After Respondent exhausted all avenues of relief, the Court lifted the stay on April 14, 2021.  ECF No. 22.

On April 16, 2021, Keith Kiuchi ("Kiuchi") entered an appearance on Respondent's behalf.  ECF No. 24.

On July 9, 2021, the Court issued an Order Regarding Reciprocal Discipline Proceedings, explaining that it would not hold an evidentiary hearing[4] nor expand

---

[3]  The Ninth Circuit has determined that under *Selling v. Radford*, 243 U.S. 46 (1917), due process is satisfied with the issuance of an order to show cause and a review of the state court record.  *See In re Kramer*, 193 F.3d 1131, 1133 (9th Cir. 1999) ("*Kramer I*") (citations omitted); *In re Kay*, 481 F. App'x 407, 408 (9th Cir. 2012) ("Kay's contention that the district court violated his due process rights when it did not conduct an evidentiary hearing is unpersuasive because the district court proceedings met due process requirements." (citing *Kramer*, 193 F.3d at 1133)); *see also In re Sanai*, CASE NO. RD13-76MJP, 2013 WL 12185783, at *2 (W.D. Wash. Dec. 18, 2013), *aff'd sub nom. Sanai*, 653 F. App'x 560 (9th Cir. 2016).

[4]  The Court authorized Respondent to submit a declaration from former Governor

(continued . . .)

the scope of evidence unless a review of the record before the Hawaiʻi Supreme

Court revealed the need for additional information.  ECF No. 37.

On July 11, 2021, the Court, exercising its discretion under Local Rule 83.4,

requested that Chief Judge J. Michael Seabright appoint a three-judge panel.  ECF

No. 38.  Chief Judge Seabright appointed U.S. District Judges Leslie E. Kobayashi

and Jill A. Otake, and U.S. Magistrate Judge Kenneth J. Mansfield,[5] to the panel.

ECF No. 39.

On August 25, 2021, Respondent filed an Urgent Ex Parte Request under

Oath to the Honorable J. Michael Seabright, Chief Judge, to Amend his July 12,

2021 "Order Appointing Three-Judge Hearing Panel" [Doc. 39], requesting

_____

(. . . continued)
John Waihee, who served as Respondent's counsel in his disciplinary proceedings.
ECF No. 37.  Notwithstanding the three-week window to do so, Respondent waited
until the close of business on the deadline to request an extension of time to file the
declaration.  ECF No. 40.  Respondent cited his inability to personally draft
Waihee's declaration due to health issues and competing deadlines as the basis for
an extension of time.  *Id.*  The Court partially granted the request, extending the
deadline by two days, but expressed concern that Respondent was drafting
Waihee's declaration.  ECF No. 41.  Respondent moved for reconsideration,
presenting a number of facts that were not included in the initial request.  ECF No.
42.  Contradicting the bases for his request for an extension, he also claimed that
he never intended to draft Waihee's declaration and that he needed additional time
because his counsel planned to meet with Waihee on the deadline.  *Id.*  The Court
denied the motion because Respondent raised arguments not presented in his
original request and he demonstrated that he had not even attempted to comply with
the original deadline.  ECF No. 43.

[5]  Judge Otake and Magistrate Judge Mansfield were already assigned to this case
upon the filing of the Answer.  ECF Nos. 3, 4.

consolidation of this case and another pending case in which he is a plaintiff (Civil No. 21-00175 JAO-KJM), as well as a three-judge panel comprised of judges who are not presiding over one of his cases currently pending in district court or on appeal.  ECF No. 45; *see also* ECF No. 45-1.  The Court denied the request because Respondent did not provide authority, nor could he, entitling him to a three-judge panel comprised of judges having no ties to his cases.  ECF No. 47.  The Court also concluded that Respondent failed to properly seek consolidation and that consolidating this reciprocal discipline case with his other civil case would be inappropriate in any event.  *Id.*

On August 30, 2021, Respondent filed a Motion for Reconsideration.  ECF No. 49.  This motion and the underlying request were improperly filed by Respondent himself.  He was previously admonished on multiple occasions that he may not act on his own behalf if he is represented by counsel.  *See*, *e.g.*, ECF No. 27 ("Although Mr. Kiuchi has entered an appearance as co-counsel, ECF No. 24, Mr. Dubin is reminded that because he 'is represented by an attorney, [he] may not act on his or her own behalf in the action unless an order of substitution shall first have been made by the court.'  Local Rule 83.5(a).  In other words, Mr. Dubin may represent himself or Mr. Kiuchi may represent him, but not both.  As long as Mr. Kiuchi remains counsel of record, Mr. Dubin cannot act on his own behalf."

(alteration in original)).  As a result, the Court disregarded the motion and deemed it withdrawn.  ECF No. 50.

On September 7, 2021, the eve of oral argument, Kiuchi filed a Declaration representing that he is unable to comply with the Court's September 3, 2021 Entering Order requiring that references to the underlying record be made pursuant to the corresponding CM/ECF citations.  ECF No. 66 at 2–3 (¶¶ 2, 5–6).  He complained that the Court's docketing of the Hawaiʻi Supreme Court record resulted in renumbered, redesignated, and voluminous CM/ECF internal descriptions.  *Id.* at 2 (¶ 3).  In fact, the Hawaiʻi Supreme Court record was painstakingly docketed in a manner to mirror that docket (with corresponding docket numbers and document titles), and in some cases the underlying disciplinary records were separated (versus attached in clusters) so that it is even easier to navigate.  Respondent and Kiuchi should be familiar with the Hawaiʻi Supreme Court docket, having participated in those proceedings (Respondent in full and Kiuchi in part), and anyone with minimal familiarity could readily identify the CM/ECF references that correspond to the Hawaiʻi Supreme Court docket.

On September 8, 2021, the Court conducted oral argument.  ECF No. 68.  Later in the day, Respondent filed a Supplemental Post-Hearing Declaration, or in the Alternative, Offer of Proof Pending Appeal Submitted to the Panel in the

Interests of Justice.  ECF No. 69.  The unauthorized Declaration, replete with misrepresentations, was stricken.  ECF No. 70.

On September 15, 2021, Respondent filed a document titled "Local Rule 60.1 Motion for Reconsideration Based on Mistake and Newly Discovered, Hidden Evidence to Correct Manifest Error (Doc. No. 70), or in the Alternative, Offer of Proof Pending Appeal, Submitted to the Panel in the Interests of Justice."  ECF No. 71.  The Court denied the motion, finding that it was "a transparent and misguided effort to supplement the record without authorization and/or to needlessly clutter the docket by filing duplicate portions of the state court record that are already part of this record and which the Court has reviewed."  ECF No. 72.  The Court also struck the exhibits attached to the motion.  *Id.*

## LEGAL STANDARD

Federal courts are not conclusively bound by a state court's disciplinary action.  *See In re Kramer*, 282 F.3d 721, 723 (9th Cir. 2002) ("*Kramer II*") (citations omitted).  They have the "authority to supervise and discipline the conduct of attorneys who appear before them."  *Id.* (internal quotation marks and citation omitted).  A federal court may properly impose "reciprocal discipline on a member of its bar based on a state's disciplinary adjudication . . . unless an independent review of the record reveals:  (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) grave injustice which would result from the

imposition of such discipline." *Id.* at 724 (citations omitted); *see Selling*, 243 U.S. at 50–51; *see also In re Rosenthal*, 854 F.2d 1187, 1188 (9th Cir. 1988) (per curiam) ("[T]he state court determination is entitled to great deference and recognition absent the following conditions:  (1) the state procedure did not provide adequate notice and an opportunity to be heard; (2) the proof of facts establishing the 'want of fair private and professional character' were so infirm that the court should not accept the state court's decision; or (3) some other grave reason existed that should prevent the court from recognizing the state court's determination." (citation omitted)).  The disciplined attorney bears the burden of establishing at least one of these elements by clear and convincing evidence.  *See Kramer II*, 282 F.3d at 724–25 (citations omitted).

Although "federal courts generally lack subject matter jurisdiction to review the state court decisions," they "may 'examine a state court disciplinary proceeding if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court.'"  *Kramer I*, 193 F.3d at 1132–33 (footnote and citation omitted).  In examining the state court record "to determine whether any of the *Selling* infirmities exist," courts "must accord a presumption of correctness to the state court factual findings."  *Rosenthal*, 854 F.2d at 1188 (citation omitted); *see Gadda v. Ashcroft*, 377 F.3d 934, 943 (9th Cir. 2004) (citations omitted).  Doing otherwise would draw the court "into an extensive

inquiry requiring it to sit in review of a [state supreme court] judgment."

*Rosenthal*, 854 F.2d at 1188.

Local Rule 83.4(b) governs reciprocal discipline proceedings in this district:

> (b) When it comes to the attention of the court that a member of the bar of this court, or other person authorized to practice in this court, has been disbarred or suspended from practice by any other court, has been found guilty of a crime that is a felony or involves dishonesty or false statement, or fails to satisfy any of the court's present requirements for admission, a notice shall be mailed to such person's last known residence and business addresses, requiring that person to show cause within fourteen (14) days after the mailing of such notice why disbarment or suspension before this court should not occur.

> . . . .

> If the person files a timely response contesting suspension or disbarment, the district judge to whom the matter is assigned shall determine whether suspension or disbarment is nonetheless appropriate and the extent to which further investigation or process is warranted. In conjunction with that determination, the person shall promptly comply with any informational or evidentiary request made by the district judge.

*Id.*

## DISCUSSION

Respondent argues that reciprocal discipline should not be imposed because the record proves by clear and convincing evidence that all three *Selling* elements are met. ECF No. 2 at 6–7 (¶ 17). In particular, Respondent points to purported due process violations that occurred during the disciplinary proceedings, erroneous charges, and conflicts of interest. *Id.* at 4–7. He also complains that the

27

Disbarment Order was "written in a manner considerably below the judicial scholarly workmanship of this Court, lacking in both detail and in consideration of all relevant facts, notwithstanding the severity of the punishment."  *Id.* at 4 (¶ 10).

Respondent incorporates by reference his motion for reconsideration filed in (and denied by) the Hawaiʻi Supreme Court "as if fully set forth herein and as his factual and legal basis for opposing reciprocal discipline."  ECF No. 2 at 5 (¶ 13). However, the Court does not consider arguments and filings incorporated by reference beyond their existence in the disciplinary record.  *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("[T]he incorporation of substantive material by reference is not sanctioned by the federal rules at issue, and the district court did not abuse its discretion in striking the incorporations."); *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) ("[T]he Court will not consider the arguments that Plaintiff improperly seeks to incorporate by reference.  This Court only considers arguments that are specifically and distinctively raised by the parties in their briefs." (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)); *Seto v. Thielen*, Civil No. 10-00351 SOM-BMK, 2010 WL 2612603, at *3 (D. Haw. June 28, 2010) ("Plaintiffs may not incorporate by reference facts and arguments previously made.").

In any event, the bulk of Respondent's motion for reconsideration substantively challenged the findings that resulted in his disbarment.  The sole

issue before this Court is whether reciprocal discipline should be imposed; the Court does not sit in appellate review of the Hawaiʻi Supreme Court's decision.  In reciprocal discipline cases, "an attorney's misconduct has already been adjudicated by another court or disciplinary agency.  Thus, a court seeking to impose reciprocal discipline engages in a function far different from a court seeking to impose discipline in the first instance." *Kramer II*, 282 F.3d at 725.  To impose reciprocal discipline, the Court "need only conduct a deferential review of the proceedings that resulted in the initial discipline imposed to satisfy itself that the discipline was not inappropriate under one or more of the *Selling* factors." *Id.* (citation omitted).

After comprehensive review of the Hawaiʻi Supreme Court record (which includes the underlying disciplinary proceedings), Respondent's submissions, and the arguments presented at the hearing, the Court finds that Respondent has not carried his burden of establishing by clear and convincing evidence a lack of due process, infirmity of proof of misconduct, or that grave injustice would result if reciprocal discipline is imposed.  The Court accords a presumption of correctness to the Hawaiʻi Supreme Court's factual findings.

## A.    **Due Process**

Respondent asserts that his due process rights were violated throughout the course of his disciplinary proceedings, citing the following examples:  biased

investigation of charges, charges dating back more than 10 years,[6] hidden penalties not disclosed with the charges, adjudication of four cases simultaneously, mixing witness testimony during hearings, the conflicted hearing officer's refusal to recuse, inability to cross-examine material witnesses whose testimony was admitted, wholesale adoption of ODC's proposed findings by the hearing officer, the Disciplinary Board's adoption of the hearing officer's findings, intentional concealment of a board member's conflict by the Chairperson, secrecy of the Board vote, delayed issuance of the Board Report to the Hawaiʻi Supreme Court, a changed Board Report; and drafting of the Report by a staff member with a conflict of interest.  ECF No. 2 at 4–5 (¶ 12).  But baldly characterizing the foregoing as due process violations do not make them so.  Many have no bearing on due process protections and others are directly contradicted by the record.[7]

---

[6]  It is unclear why Respondent advances this argument when *none* of the allegations against him preceded the ODC's Amended Petition by 10 years.  With the exception of the charges pertaining to his mortgage solicitation application, the complaints against him involved conduct occurring in 2012 or later.

[7]  Respondent has repeatedly argued that his rights were violated by the Disciplinary Board's delay in issuing the Report to the Hawaiʻi Supreme Court. But after the Disciplinary Board entered its Decision, any delay was due to Respondent's attempts to set aside the FOFCOL and Decision, which required additional proceedings.  ECF Nos. 54-18 to 54-33.  Respondent has also persistently suggested that the Disciplinary Board improperly "changed" its Report.  He is mistaken.  *See* ECF No. 58-19 at 2.  The Decision is a distinct document from the Report presented to the Hawaiʻi Supreme Court.  *See* RSCH

(continued . . .)

In assessing due process, the Court focuses on whether the disciplinary proceedings afforded Respondent adequate notice and an opportunity to be heard.[8] *See Rosenthal*, 854 F.2d at 1188; *Rosenthal v. Justs. of the Sup. Ct. of Cal.*, 910 F.2d 561, 564 (9th Cir. 1990) ("The lawyer subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." (citations omitted)).  Additional protections include calling witnesses and cross-examining them, receiving a written decision, and having an opportunity for judicial review. *See Justs. of the Sup. Ct. of Cal.*, 910 F.2d at 564 (citation omitted); *Scheer v. Kelly*, 817 F.3d 1183, 1189 (9th Cir. 2016); *cf. Casumpang v. ILWU Loc. 142*, 108 Hawaiʻi 411, 423–24, 121 P.3d 391, 403–04 (2005) ("'[D]ue process is not a fixed concept requiring a specific procedural course in every situation.  Rather, due process is flexible and calls for such procedural protections as the particular situation demands' and . . . 'the basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" (brackets and citation omitted)).

--------------------------------------

(. . . continued)
Rule 2.7(d) (distinguishing between affirmance or modification of the report of the hearing committee or officer and the report — containing the Disciplinary Board's findings and recommendations —  submitted to the Hawaiʻi Supreme Court).

[8] "An opportunity to be heard, however, does not necessarily include an opportunity to present one's arguments orally." *Partington v. Gedan*, 961 F.2d 852, 865 (9th Cir. 1992).

Here, Respondent received notice and had ample opportunity to be heard in the disciplinary proceedings and before the Hawaiʻi Supreme Court.

### 1.    Disciplinary Board

Respondent filed extensive briefing addressing the allegations against him, participated in seven days of formal hearings before Hughes, presented witnesses and evidence, and participated in hearings before the Disciplinary Board.  *See generally* ECF Nos. 52–56 (record of disciplinary proceedings).  He also availed himself of various mechanisms to challenge findings and decisions, and raised conflict issues in the disciplinary proceedings.  *See* ECF Nos. 53-25, 53-27, 53-33, 53-35, 54-5, 54-8, 54-18 to 54-22, 54-27, 54-34.  That he obtained an adverse ruling from the Disciplinary Board regarding his discipline and the purported conflicts of interests does not mean he was deprived of due process.  ECF No. 54-33.  Indeed, the fact that he raised and was heard on the subject issues demonstrates that he received due process.

Regarding the alleged conflicts of interest, the record supports the Disciplinary Board's and the Hawaiʻi Supreme Court's determinations that neither Hughes nor Horovitz had conflicts that undermined the proceedings.  Moreover, Horovitz recused himself before the Disciplinary Board issued its Report.  Respondent therefore has not met his burden of establishing by clear and convincing evidence that any bias, prejudice, or conflict infected the proceedings.

*See In re Trask*, 46 Haw. 404, 420, 380 P.2d 751, 760 (1963) ("A fair trial by an impartial tribunal is essential to due process." (citation omitted)).

The record instead reveals a troubling pattern of asserting conflicts and pressing the issue only after a tribunal renders an unfavorable decision, which the Hawaiʻi Supreme Court has held amounts to a waiver of any conflict. *See ODC v. Au*, 107 Hawaiʻi 327, 339, 113 P.3d 203, 215 (2005) (holding a party waives a conflict by "waiting to see whether they win and if they lose moving to disqualify a judge who voted against them" (internal quotation marks and citation omitted)). For example, at the May 15, 2017 prehearing conference before Hughes, Respondent disclosed his intention to file a motion to disqualify Hughes but never did prior to his multi-day hearing in November 2017. ECF No. 54-5 at 10:24–25. He waited nearly *two years* — following the issuance of the FOFCOL on April 12, 2018 and the Disciplinary Board's Decision on February 13, 2019 — to seek Hughes' disqualification. ECF Nos. 54-20 to 54-22. He concurrently requested disqualification of the Disciplinary Board and to set aside the FOFCOL and Decision based on conflicts of interest and the appearance of impropriety in violation of his due process rights. ECF Nos. 54-20 to 54-22.

Meanwhile, Respondent revived and re-engaged in the case in which Hughes was opposing counsel *after* the issuance of the FOFCOL and Decision, respectively, to point out active conflicts. ECF No. 54-34 at 3:19–10:1, 23:10–

33

26:15; ECF Nos. 54-18, 54-19.  In the case involving Hughes, inactive since 2012, Respondent suddenly reached out to Hughes in January 2019, offering a settlement and then relying on their email communications to demonstrate that the case was "open."  ECF Nos. 54-18, 54-34 at 23:10–14, 23:21–24:1.

### 2.   Hawaiʻi Supreme Court

Respondent raised the same due process violations arguments before the Hawaiʻi Supreme Court that he raises now.[9]  ECF Nos. 60-1, 61-7.[10]  Although not specifically addressed in the Disbarment Order, the Hawaiʻi Supreme Court rejected all contentions that the disciplinary proceedings were defective.  It also conducted a de novo review of Respondent's motion for reconsideration and the entire record, and denied the motion with the exception of a 31-day extension of the effective date of Respondent's disbarment.  ECF No. 61-23.  And in its subsequent order denying Respondent's motion to dismiss the Disbarment Order and a subsequent motion for reconsideration, the Hawaiʻi Supreme Court expressly rejected Respondent's due process arguments:

> Finally, we find and conclude that this court's September 9, 2020 order of disbarment was based solely and exclusively upon the disciplinary petitions and resulting record arising from the four

---

[9]  Respondent also asserted these arguments (and more) in his Petition for Writ of Certiorari submitted to the U.S. Supreme Court.  ECF No. 16-1.

[10]  Respondent presented the same arguments in other filings as well.  *See*, *e.g.*, ECF Nos. 57-16, 57-30.

> ODC cases listed in the caption of the September 9, 2020 order, that were heard by the Hearing Officer, considered by the Disciplinary Board, and reviewed *de novo*, exhaustively and carefully, by this court, which, after full consideration of Respondent Dubin's numerous due process arguments, concluded the record fully warranted disbarment.

ECF No. 64-21 at 2. Respondent therefore had three additional opportunities to be heard on these issues.

Although Respondent did not raise this argument in his Answer, his other submissions contain allegations that inappropriate ex parte communications occurred between the Chair of the Disciplinary Board and the Hawaiʻi Supreme Court that influenced the decision to disbar him.[11]  ECF No. 35 at 5 (¶ 2)

---

[11]  In the present case, Respondent similarly attempted to manufacture a conflict based on communications from Bradley Tamm *sent to the clerk's office*. ECF No. 49 at 3 ("Judge Otake, although having received Mr. Tamm's *ex parte* documents, has responded that the *ex parte* materials addressed to her were provided instead to the clerk's office, *albeit* presumably for her[.]"). Respondent's presumptions — and nothing more — are incorrect. He complained that "to this day [he] does not know what Mr. Tamm gave Judge Otake, only that she thereafter following [sic] being provided by Mr. Tamm with constant 'updates,' she [sic] tore into Respondent unfairly (Doc. 19)." *Id.* at 3–4 n.4. The Court has never stated that "constant" updates were provided, and it disclosed that updates concerned the status of public filings — in other words, nothing bearing on the substance of any matters in this case. ECF Nos. 18, 46. And Respondent's claim that he was "tor[n] into" is belied by the record. ECF No. 19 ("Respondent is ordered to explain, by 4/13/21, why he has not informed the Court about the 4/5/21 denial of his petition for writ of certiorari. *See* https://www.supremecourt.gov/orders/courtorders/040521zor _3204.pdf. In his 3/31/21 Status Report, Respondent represented that he would notify the Court when the Supreme Court ruled upon his petition. ECF No. 17. The Court has cautioned, on multiple occasions, that Respondent's failure to apprise the Court

(continued . . .)

("Comments were made, whether they were on the record or off the record, that certainly left [Respondent] with the impression that there was a communication between the chair of the Disciplinary Board of the Hawaiʻi Supreme Court and the Hawaiʻi Supreme Court that amounted to an ex parte communication."); ECF No. 32 at 6–10.  Respondent believes that because he received complaints from former clients before the issuance of the Disbarment Order, additional complaints must have been shared with the Hawaiʻi Supreme Court that influenced its decision to disbar him, thereby depriving him of due process.  ECF No. 32 at 6.  This theory is purely speculative and without basis.  Throughout the record, the four ODC cases at issue are clearly identified.  The FOFCOL and Decision address *only* those four cases.  ECF Nos. 53-24, 54-14.  The Disbarment Order expressly disbars Respondent based on his conduct in three of the cases.

Like his other arguments, Respondent sought reconsideration before the Hawaiʻi Supreme Court and the court squarely addressed his theory:

---

(. . . continued)
within one (1) business day of filings and developments in other proceedings that may bear up on [sic] this case may result in the imposition of reciprocal discipline. ECF Nos. 5, 7.").  Respondent even took it a step further, arguing that the Court's entering order requiring him to explain his failure to comply with a prior order prejudiced the proceedings and denied him briefing of issues.  ECF No. 49 at 5. Not only was the order unrelated to briefing, but Respondent also had a full opportunity to present his arguments in his Answer, and has, without authorization, asserted additional arguments in other filings.  So, no deprivation has occurred.

> [W]e reiterate that the disposition of this matter was based solely and exclusively upon the record of the four cases from the Office of Disciplinary Counsel listed in the caption of the disbarment order, a record which provided ample evidence supporting Respondent Dubin's disbarment, and expressly state that no *ex parte* communications or exchanges of any variety occurred in the disposition of this matter.

ECF No. 64-37 at 1–2.  Moreover, having conducted an independent review of the entire record, the Court finds that there is *no evidence* in the record or otherwise to support Respondent's conjecture, much less clear and convincing evidence.

Respondent's final argument concerns Norris, who he claims authored the Disciplinary Board's Report[12] despite her conflict of interest, having represented him previously.  ECF No. 2 at 5 (¶ 12).  Respondent filed a motion to disqualify Norris, all attorney staff of ODC and the Disciplinary Board, and to dismiss the petition.  ECF No. 57-16.  He contended that Norris successfully represented him in prior ODC proceedings for "similar false ethical charges" and without his consent "unethically chose[] to represent the ODC against [him]."  *Id.* at 2 (¶ 3) (citation omitted).  As a result, Respondent sought disqualification of ODC and Disciplinary Board attorneys on the basis that Norris' conflict was imputed to them.  *Id.* at 4 (¶ 6).  He further argued that dismissal was warranted by the ethical

---

[12]   ODC disputed Norris' involvement with the drafting, editing, or other participation in the preparation of the Report.  ECF No. 58-19 at 3.

violations, or alternatively, that attorneys from the Department of the Attorney General replace ODC's counsel to ensure impartial review.[13]  *Id.* at 4–5 (¶ 10).

Norris countered that she was retained solely to review files and records related to a 2006 ODC case against Respondent, and never represented him nor provided legal advice.  ECF No. 57-20 at 11–12 (¶ 6.A–B).  Respondent later conceded that Norris did not formally represent him while continuing to argue here that she represented him.  ECF No. 57-30 at 3 (¶ 6).

The Hawaiʻi Supreme Court disqualified Norris and ODC, concluding that her consultation with Respondent "in 2006 implicated a substantially related matter."  ECF No. 57-37 at 2 (citation omitted).  It required an outside attorney to appear on the briefings and submissions in the proceedings.  *See id.*  Because Respondent obtained partial relief, his remaining dispute appears to be that Norris' participation in the drafting of the Report deprived him of due process. Respondent raised this argument in his motion to disqualify and again in his subsequent motion to dismiss.  ECF Nos. 57-16, 58-15.  Norris did not draft the Report.  ECF No. 58-19.  Because the Court has determined the underlying proceedings before Hughes and the Disciplinary Board were not tainted, challenges to the Report's reliance on the FOFCOL necessarily fail.  Most importantly, these

---

[13]  This is another tactic employed here.  ECF No. 49 at 9 (requesting that Chief Judge Seabright ask the Chief Judge of the Ninth Circuit to appoint out-of-district judges to preside over this case and his civil action).

arguments were thoroughly considered and rejected by the Hawaiʻi Supreme Court.  ECF No. 58-29; ECF No. 64-21.

For these reasons, there are no due process violations — and certainly none established by clear and convincing evidence — precluding the imposition of reciprocal discipline.

## B.     Proof of Misconduct

To satisfy the relevant standard, Respondent must show that "the proof of facts establishing the 'want of fair private and professional character' were so infirm that the court should not accept the state court's decision." *Rosenthal*, 854 F.2d at 1188 (citation omitted).  He has failed to do so.

Notwithstanding Respondent's insistence that the allegations against him were erroneous and refuted by the evidence, the record contains significant proof of misconduct in the three ODC cases.  ECF No. 53-24.  Hughes, the Disciplinary Board, and the Hawaiʻi Supreme Court relied upon this proof in recommending and ultimately imposing disbarment.  Respondent's repudiation of the allegations consists of deflection and finger pointing, not evidence.  And when he references evidence, it does not stand for the proposition for which it is cited.  Findings are not insufficient or untrue merely because they do not comport with Respondent's narrative.

For example, in his motion for reconsideration filed with the Hawaiʻi Supreme Court, Respondent insists that the Disbarment Order incorrectly relies on two prior disciplines as aggravating factors and he disputes the existence of prior discipline. ECF No. 61-7 at 4 ("It was therefore fundamental prejudicial error for this Court to adopt in aggravation the ODC's accusation of prior discipline. . . . There are two possible explanations for this mistake."). Yet he acknowledges that he was previously disciplined by the California Bar Court and ODC.[14]  *Id.* at 4–6. He attempts to explain away the discipline, going so far as to recast the California discipline — a *public reproval* — as an "approval." *Id.* at 5 ("[T]he California Bar Court, of whose Bar Respondent has been a Member since 1964, conducted their similar investigation, the Bar Court Settlement Judge agreeing with the ODC, nevertheless within his limited authority gave Respondent the minimum public reproval which when published read like approval and not reproval[.]"). But Respondent's wordsmithing cannot transform this prior discipline into an endorsement of his conduct. ECF No. 55-11 at 80–91.

Based on its review of the extensive record, the Court finds no infirmities in the proof that warrants disregarding the Disbarment Order.

---

[14]  The FOFCOL clearly identifies the California State Bar and ODC disciplinary offenses as the pertinent prior discipline. ECF No. 53-24 at 33, 44. Therefore, it is not a bare accusation by ODC.

### C.   Grave Injustice

Respondent calls his disbarment a "death sentence."  ECF No. 2 at 8. Understandably, taking away one's license to practice law has serious ramifications for a lawyer's personal and professional life.  Reciprocal discipline here involves disbarment and it is not a decision made lightly or without disregard for the personal and professional pain that will likely result.  However, Respondent confuses the painful repercussion from reciprocal discipline itself (*i.e.*, disbarment) with the legal standard of whether imposing reciprocal discipline would result in grave injustice because the discipline was improperly imposed.  Where, as here, the record supports the discipline imposed and does not reveal a lack of due process, there is simply no reason "that should prevent the court from recognizing the state court's determination."  *Rosenthal*, 854 F.2d at 1188 (citation omitted). Respondent cannot engage in conduct warranting disbarment then cite the consequences that flow from that disbarment as bases to avoid reciprocal discipline.

In sum, Respondent has not established by clear and convincing evidence that any exceptions precluding the imposition of reciprocal discipline apply here. There is no evidence of due process violations, insufficient proof, or grave injury. Accordingly, the Court imposes reciprocal discipline and disbars Respondent from the practice of law before it.

41

**CONCLUSION**

For the reasons stated herein, Respondent Gary Victor Dubin is HEREBY

DISBARRED from practicing in the U.S. District Court for the District of Hawaii

pursuant to Local Rule 83.4(b), effective on the date of this Order.  The Court

directs the clerk's office to provide copies of this Order to the Clerk of the United

States Supreme Court, the Clerk of the United States Court of Appeals for the

Ninth Circuit, and the Clerk of the Hawai'i Supreme Court.

IT IS SO ORDERED.

DATED:     Honolulu, Hawai'i, September 30, 2021.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
United States District Judge


/s/ Jill A. Otake

Jill A. Otake
United States District Judge


/s/ Kenneth J. Mansfield

Kenneth J. Mansfield
United States Magistrate Judge